## The People of the State of Illinois, Defendant in Error, v. Frank Unger, Plaintiff in Error.

1. ELECTIONS, § 237*—*how City Election Law construed as to powers of commissioner.* The City Election Law, art. IV, sec. 26 (J. & A. ¶ 5055), providing that election commissioners when in session shall have authority and shall be required to keep the peace and to cause the arrest of any one who has committed a breach of the peace or of the election laws, and that it shall be the duty of all officers of the law present to obey the orders of such election commissioners or either of them, limits the duties of the election commissioners to the time when they are in session.

2. ELECTIONS, § 239*—*when assault on election commissioner not an offense' against election law.* A city election commissioner was not performing any duty imposed upon him by law at the time of an assault upon himself outside the polling place, where he called upon an officer to assist an election judge and another person in handling a man who had been accused of illegally voting and had been ejected from the polling place at the instance of the commissioner, such commissioner being then struck by a member of a crowd which came to the aid of the expelled voter.

Error to the County Court of Vermilion county; the Hon. E. J. HAWBAKER, Judge, presiding. Heard in this court at the October term, 1914. Reversed. Opinion filed April 16, 1915.

DWYER & DWYER, for plaintiff in error; H. A. SWALLOW, of counsel.

J. H. LEWMAN, for defendant in error; C. M. CRAYTON, of counsel.

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

MR. PRESIDING JUSTICE ELDREDGE delivered the opinion of the court.

Plaintiff in error was convicted under the second count of an information filed by the State's Attorney in the County Court of Vermilion county, which is as follows:

"That one Frank Unger on the 21st day of April, 1914, in the County of Vermilion, State of Illinois, at a general annual election then and there lawfully had and held in the Third Precinct of the Third Ward of the City of Danville, Illinois, on said April 21, 1914, did then and there knowingly and wilfully interfere with Joseph H. Barnhart, then and there an election commissioner of the City of Danville, Illinois, in the discharge of his, the said Joseph H. Barnhart's duties as such election commissioner for the said' City of Danville, in the said Third Precinct of the Third Ward of the said City of Danville, contrary to the statute, etc.''

The city of Danville had, prior to the time of the alleged commission of the alleged offense, adopted an act entitled, "An Act to amend an Act entitled 'An Act regulating the holding of elections and declaring the result thereof in cities, villages and incorporated towns in this State,' approved June 19, 1885, in force July 1, 1885, as amended by an act approved June 15, 1891, in force July 1, 1891,'' and approved April 24, 1899, in force July 1, 1899 (J. & A. ¶¶ 4929 et seq.), and the amendments thereto. This act, commonly called "The City Election Law,'' provides for a board of election commissioners.

On April 21, 1914, a general election was held for the election of aldermen in the city of Danville. At this time Joseph H. Barnhart, was one of the election commissioners of said city. During this day he testified that he visited the various polling places to see that the judges and clerks of election were performing their duties, that the election was conducted properly and that there were no disturbances or violations of the

election law in the polling places.  About three o'clock in the afternoon he arrived in an automobile at the polling place in the third precinct of the third ward. He left the automobile, went to the polling place, and found the election judges questioning a man who, they claimed had, voted illegally.  Barnhart said he would take the man away in his automobile.  One of the election judges and another man by the name of Cole attempted to take the man accused of illegal voting out of the polling place.  He resisted and fought to free himself.  After much disturbance they got him out of the polling place onto the sidewalk where the struggle was continued.  Barnhart called to a special officer who was in the crowd to assist Cole and the election judge in handling the man.  There was a crowd of people standing back of the 100-foot line at the time and someone in this crowd called out, ''Fight,'' whereupon a large number ran towards the officer struggling with the prisoner.  Barnhart, when he saw the crowd coming, put up his hands and called out, ''Get back.''  The evidence for the People tends to show that at this time the plaintiff in error ran past Barnhart and struck him on the hand with his fist.

Many errors have been assigned on the record, but the most serious ones are the overruling of the motion to quash the information, and the contention that the conviction cannot be sustained under this act because Barnhart was performing no duties as election commissioner at the time of the assault.  The determination of the latter proposition will dispose of all the others.

The offense charged is based upon section 2 of article VI of the Act (J. & A. ¶ 5031), which in part is as follows:

''If, at any election hereafter held in any such city * * * any person shall * * * knowingly, wilfully or fraudulently interfere with, delay or hinder, in any manner, any judge of election, poll clerk or other officer of election in the discharge of his duties

* * * upon conviction thereof, shall be adjudged guilty of a misdemeanor, and shall be punished by imprisonment in the county jail for not less than three months nor more than one year.''

Assuming that Barnhart as an election commissioner was an ''officer of election'' within the meaning of this section (which it is unnecessary to decide), was he in the performance of any duty as such commissioner at the time of the alleged assault? Counsel for defendant in error have not attempted to point out any provision of the statute imposing on the individual members of the board of election commissioners any duties to be performed in or around polling places during a general election, and we have been unable to find any. The duties of election commissioners enumerated in the act are such as they perform collectively as a board. The only section touching on their duties as peace officers is section 26 of article VI (J. & A. ¶ 5055) which, in part, provides as follows:

''Said election commissioners, *when in session*, shall have authority and it shall be their duty to keep the peace, and to cause any person to be arrested for any breach of the peace or for any breach of election laws; and it shall be the duty of all officers of the law *present* to obey the order of such election commissioners or either of them, and an officer making an arrest by direction of any election commissioner shall be protected in making such arrest the same as if a warrant had been issued to him to make such arrest.''

This section clearly limits their duties as peace officers to the time they are in session. At the time the alleged offense is claimed to have been committed, Barnhart was in the performance of no duty imposed upon him by law as election commissioner, and consequently plaintiff in error could not have knowingly and wilfully interfered with him in the discharge of a duty which did not exist. If Barnhart was such an election officer as is contemplated by section 2, and if the information is sufficient to charge the violation of said

section, the facts fail to prove the commission of the offense charged. The judgment is reversed.

*Reversed.*